[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-11529
Non-Argument Calendar
_____

Agency No. A088-471-309

TAO CHEN,

                                                                    Petitioner,

versus

U.S. ATTORNEY GENERAL,

                                                                    Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(September 28, 2017)

Before HULL, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Tao Chen petitions for review of the Board of Immigration Appeals'
("BIA") final order affirming the Immigration Judge's ("IJ") denial of his
application for asylum, withholding of removal, and relief under the United

Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT").  Chen's application is based on the protest he staged in front of a Chinese city government after he received unfair treatment in a court case seeking relief for an injury he sustained in a traffic accident by a drunk driver.  On appeal, Chen argues that because he established past persecution, a well-founded fear of future persecution, and it is more likely than not that he will be tortured if he returns to China, the BIA erred in denying his petition for asylum, withholding of removal, and CAT relief.  After thorough review, we deny the petition.

We review the BIA's decision as the final judgment, unless the BIA expressly adopted the IJ's decision.  Lyashchynska v. U.S. Att'y Gen., 676 F.3d 962, 966-67 (11th Cir. 2012).  When the BIA explicitly agrees with the findings of the IJ, we will review the decision of both the BIA and the IJ as to those issues.  Ayala v. U.S. Att'y Gen., 605 F.3d 941, 948 (11th Cir. 2010).   We do not engage in fact-finding on appeal, nor do we weigh evidence that was not previously considered below.  Al Najjar v. Ashcroft, 257 F.3d 1262, 1278 (11th Cir. 2001).

Factual determinations are reviewed under the substantial-evidence test, which requires us to "view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." Adefemi v. Ashcroft, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (en banc).  The

substantial evidence test is deferential and we may not "re-weigh the evidence" from scratch. Mazariegos v. U.S. Att'y Gen., 241 F.3d 1320, 1323 (11th Cir. 2001). We "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Najjar, 257 F.3d at 1283-84 (quotation omitted). In order to reverse administrative factual findings, we must determine that the record "compels" reversal, not that it merely supports a different conclusion. Farquharson v. U.S. Atty. Gen., 246 F.3d 1317, 1320 (11th Cir. 2001).

The Attorney General has the authority to grant asylum to an alien who meets the Immigration and Nationality Act's ("INA") definition of "refugee." 8 U.S.C. § 1158(b)(1)(A). A refugee is:

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

Id. § 1101(a)(42)(A). The applicant bears the burden of proving that he is a refugee. Id. § 1158(b)(1)(B)(i). The applicant must present specific and credible evidence demonstrating that he (1) was persecuted in the past based on one of the protected grounds or (2) has a well-founded fear that he will be persecuted in the future based on one of the protected grounds. Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1257 (11th Cir. 2006).

3

We have held that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and that [m]ere harassment does not amount to persecution." Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) (quotations omitted); see also Djonda v. U.S. Att'y Gen., 514 F.3d 1168, 1171 (11th Cir. 2008); Kazemzadeh v. U.S. Att'y Gen., 577 F.3d 1341, 1352-53 (11th Cir. 2009). Minor beatings and threats are not enough to compel a finding of persecution. See Diallo v. U.S Att'y Gen., 596 F.3d 1329, 1333 (11th Cir. 2010); see also Sepulveda, 401 F.3d at 1231 (holding that three phone calls threatening the receiver with death if she did not stop her political activities did not compel a finding of persecution).

Fines or economic sanctions may constitute persecution if they cause a "severe economic disadvantage" to the alien, considering his net worth, his sources of income, and the condition of the local economy. Mu Ying Wu v. U.S. Att'y Gen., 745 F.3d 1140, 1156 (11th Cir. 2014). To satisfy this standard, the persecution must reduce the alien's standard of living to an impoverished existence. Id. In determining whether an alien has suffered past persecution, the factfinder must consider the cumulative effects of the incidents. Delgado v. U.S. Att'y Gen., 487 F.3d 855, 861 (11th Cir. 2007).

If the petitioner cannot demonstrate past persecution, he must demonstrate that he has a well-founded fear of future persecution by showing that there is a

reasonable possibility of his suffering persecution if he returned to his home country. Mejia v. U.S. Att'y Gen., 498 F.3d 1253, 1256 (11th Cir. 2007). The fear of persecution must be "subjectively genuine and objectively reasonable." Al Najjar, 257 F.3d at 1289. The subjective component is typically fulfilled by credible testimony that the petitioner genuinely fears persecution, and the objective component generally can be satisfied by establishing either past persecution or that the petitioner has good reason to fear future persecution. Id. To show an objectively reasonable fear of future persecution, the alien must present specific, detailed facts showing a good reason to fear that he will be singled out for persecution on account of a protected ground. Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286 (11th Cir. 2005).

An applicant for withholding of removal bears the burden of establishing that it is "more likely than not" that he will be persecuted or tortured upon being returned to his country. Sepulveda, 401 F.3d at 1232. The standard for withholding of removal is more stringent than for asylum, and if an applicant is unable to prove his entitlement to asylum relief, he is generally precluded from qualifying for withholding of removal. Id. at 1232-33.

An applicant seeking protection under CAT must establish that it is more likely than not that he would be tortured if removed to the proposed country of removal. Reyes-Sanchez v. U.S. Att'y Gen., 369 F.3d 1239, 1242 (11th Cir.

2004).    Additionally, the alien must demonstrate a likelihood that he will be tortured with the acquiescence of the government, meaning that the government was aware of the torture, yet breached its responsibility to intervene.  Rodriguez Morales v. U.S. Att'y Gen., 488 F.3d 884, 891 (11th Cir. 2007).

Here, the BIA -- and to the extent of the BIA's agreement, the IJ, see Lyashchynska, 676 F.3d at 966-67; Ayala, 605 F.3d at 948 -- did not err in determining that Chen failed to show that he qualified for asylum on the basis of his political opinion.  For starters, the detention and physical mistreatment in Chen's case is similar to that in several other cases where this Court has concluded that the record did not compel a finding of past persecution.  As this record shows, Chen asserted that he was a normal worker in Tianjin City in China when he broke a vertebra to the point of disability in a traffic accident caused by a drunk driver. He said that when he sought relief for the accident in the Chinese legal system, he received an unfair order and judgment because the driver bribed the police officers and court officials to cover up the fact that he was drunk.  Chen claimed that he attempted to challenge the amount awarded to him in his civil lawsuit but was unable to, and he then began to receive threatening phone calls from "unknown persons."  In April 2006, his mother died of a heart attack because, he said, his mother was angry about the accident and his "unfair treatment."  According to Chen, he was only able to collect 30,000 RMB of the 70,000 RMB judgment; he

6

ultimately sat in front of a government building in protest, police arrested him, placed him in a cell, and interrogated him.  Chen detailed that during the interrogation, one officer punched him in the face, causing his nose and mouth to bleed, and another officer hit his arm, feet, legs and back with a baton.  Chen then was detained for four days.  Upon his release, Chen paid a penalty -- though it is unclear whether the penalty was 5,000 RMB or 35,000 RMB -- and was required to submit to house arrest and report to the police station once a week.

However, like the petitioner in Kazemzadeh, Chen offered no evidence establishing the severity of his injuries.  Notably, he did not testify that he required medical treatment either while he was detained or upon his release, and acknowledged that he did not experience any additional physical mistreatment during the four days he was detained.  Nor is there anything in this record that comes close to the allegations we found insufficient in Kazemzadeh and Djonda. See Kazemzadeh, 577 F.3d at 1352-53; Djonda, 514 F.3d at 1171.  In light of this case law, Chen's claims of detention and physical mistreatment do not compel a finding of past persecution.

As for the threats Chen reported, we've consistently concluded that the receipt of anonymous threatening phone calls, without more, does not compel a finding of past persecution.  See Silva, 448 F.3d at 1237-38.  We've also held that minor beatings and threats do not compel a finding of persecution.  See Diallo, 596

7

F.3d at 1333. As a result, even in combination with threatening phones calls, Chen's treatment does not compel a finding of past persecution. Nor did his treatment, in combination with the economic harm he may have suffered, compel a finding of past persecution. In order to rise to the level of persecution, we've said that economic injury must cause "severe economic disadvantage," considering the alien's net worth, other sources of income, and the conditions of the local economy. Mu Ying Wu, 745 F.3d at 1156. Under this standard, the economic injury "should reduce the alien 'to an impoverished existence.'" Id. Chen offered no evidence demonstrating how his economic injuries affected him, nor did he suggest that his economic injuries reduced him "to an impoverished existence." Id. Accordingly, considering the cumulative effects of Chen's claims, including the threats he received, his detention and physical mistreatment, his economic injuries, and the emotional injury he suffered from his mother's death -- all of which the BIA properly considered as a whole -- we cannot say the record compels a finding that Chen's mistreatment met the "extreme" threshold of persecution, and substantial evidence supports the decision of the IJ and the BIA.

Moreover, the record does not compel a finding, under our case law, that Chen demonstrated a well-founded fear of future persecution on account of a protected ground. According to Chen, he fears that he will be arrested and persecuted in China because he opposed corruption by government officials. In

8

Case: 17-11529    Date Filed: 09/28/2017    Page: 9 of 11

support of his claim, Chen offers that the "public security people" regularly visit his wife at his home in China, the "police often threaten her" and are still looking for him. But he did not offer evidence from his wife or otherwise about how often the visits occur, when the last visit occurred, or whether any action was taken to carry out the threats. Rather, Chen has admitted that his wife and child have continued living in China after he left and has provided no evidence that they have been harmed in any way. As we've recognized, a claim of well-founded fear is undercut when the alien has family living in the country or removal unharmed. Ruiz, 440 F.3d at 1259. There is also no evidence that the Chinese government has actively sought to determine his location since he left his home.

As for Chen's testimony about corruption, he only addressed corruption around his city, as opposed to other parts of China, and the 2012 Human Rights Report noted that Chinese authorities prosecuted corruption. For example, in 2011, the government body charged with countering corruption, the Central Commission for Discipline Inspection ("CCDI"), investigated 137,859 corruption-related cases, and 142,893 people were disciplined. The Chinese Communist Party expelled a former railroads minister for his involvement with corruption, and the CCDI removed a deputy party secretary for suspected "serious discipline violations." Regulations also provide a mechanism for Chinese citizens to request information from government agencies regarding corruption. What's more, Chen

9

offered no evidence of widespread persecution by the Chinese government of individuals opposed to corruption, and in any event, nothing in the record indicates that Chen is a major protestor or activist in the fight against corruption. On this record, the evidence does not compel a finding that Chen will be singled out for future persecution on account of his political opinion, see Forgue, 401 F.3d at 1286, and the BIA did not err in determining that he was not entitled to asylum. See Farquharson, 246 F.3d at 1320; 8 U.S.C. § 1101(a)(42)(A).

Finally, because Chen could not prove his entitlement to asylum relief, he cannot meet the more stringent burden necessary to qualify for withholding or removal. Sepulveda, 401 F.3d at 1232-33. Nor is Chen eligible for CAT relief. Chen argued that if he returned to China he would be imprisoned, but did not provide any evidence that he had been tortured while he was in China, or that he would more likely than not be tortured if he returned, or even that the Chinese authorities specifically target for torture individuals opposed to corruption by government officials. We need not consider the Human Rights Report that Chen appended to his brief because it was not presented to the agency, and the 2012 Human Rights Report stated that Chinese law prohibits the physical abuse of detainees, confessions extracted through torture, and beating prisoners. See Al Najjar, 257 F.3d at 1283-84. Accordingly, Chen did meet his burden of showing that it was more likely than not that he would be tortured by the government or

with the government's consent upon removal to China, and substantial evidence supports the IJ's finding that Chen did not show eligibility for CAT relief. Reyes-Sanchez, 369 F.3d at 1242.

We affirm the denial of Chen's application for asylum, withholding of removal, and CAT relief.

**PETITION DENIED.**